UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

LESLIE JOHN JENSEN,

        Petitioner,

    v.                              Case No. 04-CV-474

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

On May 18, 2004, Leslie J. Jensen ("Jensen") filed a petition under 28 U.S.C. § 2255 to vacate, set-aside, or correct the federal sentence he currently is serving. This matter has been fully briefed and is now ready for decision. For the reasons set forth below, Jensen's petition will be denied.

## BACKGROUND

On November 11, 1998, a grand jury sitting in this district returned a superseding indictment charging Jensen, along with 16 other co-defendants, with Racketeer Influenced and Corrupt Organizations ("RICO") offenses, RICO conspiracy offenses, and drug conspiracy offenses. (*See United States v. O'Neill et al.*, Case No. 97-CR-98, November 11, 1998 Superseding Indictment, Docket # 793.) Specifically, Jensen was charged at counts one and two with violations of 18 U.S.C. §§ 1962(c) and (d). Jensen pled not guilty to each of these offenses, and after several rounds of pretrial motions, he proceeded to trial. On

June 15, 2000, Jensen was found guilty of both counts. He was sentenced to two concurrent terms of 360 months' imprisonment, followed by a five-year term of supervised release. Jensen appealed to the Seventh Circuit Court of Appeals, which affirmed his conviction and sentence. *United States v. Warneke*, 310 F.3d 542 (7th Cir. 2002). He then petitioned for rehearing en banc and for writ of certiorari to the Supreme Court, both of which were denied. *See Jensen v. United States*, 538 U.S. 1035 (2003).

## ANALYSIS

Jensen's original petition, filed on May 18, 2004, failed to comply with Rule 2 of the Federal Rules Governing Section 2255 Proceedings, and was returned to him on May 25, 2004 with the directive that he file an amended petition within 60 days. Jensen complied with this directive, and on July 28, 2004, he filed an amended petition and memorandum in support of his petition, a series of exhibits, and a request for an evidentiary hearing. In his amended petition, Jensen sets forth several grounds alleging ineffective assistance of counsel and judicial misconduct. (*See* Jensen's Brief in Support of Amended Section 2255 Petition, Docket # 12.) (hereinafter "Jensen's Brief".) On January 9, 2006, the government filed a detailed response to Jensen's petition and recommended that it be dismissed without an evidentiary hearing. Finally, on October 13, 2006, Jensen filed a subsequent motion to amend his petition and expand his argument that the court violated his constitutional rights by depriving him of a fair trial.

-2-

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the ground that his sentence was imposed in violation of the Constitution or the laws of the United States. To receive relief under section 2255, a petitioner must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979). The Seventh Circuit has also articulated that the substance of the petition takes precedence over its form, and petitions that arise under section 2255 are properly treated as such. *Guyton v. United States*, 453 F.3d 425 (7th Cir. 2006). Jensen's petition clearly alleges that his sentence was imposed in violation of his Sixth Amendment rights along with other constitutionally protected rights, and the court notes at the outset it falls classically within the purview of section 2255 petitions.

**I. Ineffective Assistance of Counsel**

Jensen sets forth several grounds where he alleges he suffered Sixth Amendment violations due to the ineffective assistance of his attorneys at both the trial and appellate level. Jensen was represented during trial and for an interlocutory appeal by Charles Giesen ("Giesen"), and he was represented on appeal by Dean Strang ("Strang"). Jensen argues that his trial attorney was ineffective because he (1) failed to properly impeach government witnesses; (2) failed to properly investigate and call witnesses at Jensen's urging; (3) failed to deliver an opening statement; (4) failed to secure expert witness services as Jensen directed; (5) failed

-3-

to file for a severance of charges and defendants; (6) and finally Jensen argues Giesen was ineffective because he failed to adequately discuss the plea agreements. (Jensen's Brief 11-16, 26.) Jensen further argues his appellate counsel was ineffective because he failed to address potential prosecutorial misconduct on appeal, and because he failed to appeal the judgment of motions decided at the trial level. (*Id.* at 20-23.)

To establish that he was deprived of his right to effective counsel, Jensen must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). Stated another way, Jensen must establish that his attorney's performance was unreasonable viewed against prevailing professional norms, and that he was prejudiced by this conduct. *Id.* When evaluating the attorney's conduct, the court is "highly deferential" towards counsel, and there is a presumption that the attorney performed within the bounds of a wide range of reasonable professional assistance. *Id.* at 669; *see also United States v. Holman*, 314 F.3d 837 (7th Cir. 2002). The reviewing court should also consider the attorney's conduct in the context of the case as a whole, not in isolated incidents of the attorney's representation. *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998). Thus, to meet this high burden, Jensen must demonstrate that due to his attorney's representation viewed in its entirety, he suffered "errors so

-4-

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.

### A.    Failure to Properly Impeach Witnesses

Jensen claims Giesen was ineffective due to his inadequate impeaching of cooperating government witnesses Mark Quinn ("Quinn") and David Wolf("Wolf'). Jensen argues that Giesen failed to secure psychological evaluations of the witnesses; he failed to gather and elicit information highlighting their histories of physical violence and drug abuse; and he failed to question the witnesses about what they would receive as consideration for their testimony.  Jensen further states that had this information been properly introduced through Giesen's impeachment, it would have affected the jurors' findings of guilt.

Throughout the trial, testimony and questioning unequivocally established facts regarding the drug use and violent dispositions of these key government witnesses.  Several of the co-defendants' attorneys made this information widely known to the jurors, and there was no question that the character of these witnesses was impeached in this regard.  Moreover, Jensen is incorrect in his statement that Giesen failed to impeach any government witnesses; indeed, a review of the record shows that Giesen vehemently objected to and cross-examined several government witnesses.  Moreover, Giesen impeached these witnesses on precisely the grounds that Jensen claims to have been inadequate.  For example, during Wolf's testimony, Giesen elicited information regarding the reduced sentence Wolf might potentially

-5-

receive for his cooperation, the violent crimes he committed and his violent history, his drug use, and the multiple lies he told during the course of Outlaw crimes. (*See* Trial Tr. vol. 47, 524-44, April 5, 2000.) The same is true for the other government witnesses. Each of the defendants' attorneys, including Giesen, sought to impeach the witnesses on multiple grounds, including drug use, their cooperation with the government, and prior crimes.

Jensen argues that had the information set forth in his petition been admitted into evidence, it would have shown the character of the government witnesses, their propensity to lie, and their motivation for testifying. However, as stated above each of these areas was thoroughly covered leaving Jensen without a viable claim of ineffectiveness on the part of his counsel.

### B.     Failure to Call Witnesses Requested by Jensen

Jensen also admonishes Giesen for not calling witnesses that Jensen argues would have further impeached the government's witnesses. Jensen argues that the following three witnesses should have been called for his defense: Mark Mellenthien ("Mellenthien"), Rick Baldwin ("Baldwin"), and Kevin O'Neill ("O'Neill"). He argues their testimony would have (1) established that a government witness was untruthful; (2) set forth information that exculpated Jensen from activities charged in the indictment; and (3) further impeached government witnesses.

Just as the choice to call a witness is a strategic decision subject to review under the highly deferential *Strickland* standard, the decision *not* to call a witness is

-6-

similarly a strategic decision held to the same standard. *See Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). Furthermore, an attorney's trial strategy is subject to a highly deferential standard under the *Strickland* analysis; indeed, "usually, counsel's decision not to call a witness is a tactical decision not subject to review." *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994).

The witnesses Jensen argues should have been called do not appear to offer any strategic help for his defense. He claims O'Neill, a co-defendant, should have been called to the stand to testify. However, O'Neill exercised his right not to testify, and would have been unavailable as a witness. Next, he claims Mellenthien, a probation officer, would have testified that there were alternative reasons for Jensen's travels during the time and place of the murder charged in the racketeering acts. However, it's questionable if this testimony would have been admitted at all under the Federal Rules of Evidence, and even if it was admissible, it does not appear as though it would be particularly helpful for Jensen's defense. Jensen claims Mellenthien, his supervising probation officer, would have testified that Jensen traveled to Rockford, Illinois for legitimate reasons such as purchasing motorcycle parts from LaMonte Mathias. Jensen was charged in Racketeering Act No. 11 of the Superseding Indictment with the murder of LaMonte Mathias. It is not unreasonable for Giesen, and was perhaps even wise for him not to call a witness that would have linked his client directly to the murder victim during the relevant time frame, regardless of the fact that Mellenthien would testify that he approved of the

travel requests. Finally, Jensen argues that Baldwin would have offered further impeachment evidence of government witness Quinn. As stated above, Quinn was subjected to the vigorous cross examination by all of the defense attorneys, and he was impeached on several levels; any additional testimony offered would not have added useful information and would have been cumulative.

Attacking an attorney's trial strategy is an arduous burden that Jensen has simply not met. An attorney's investigation and subsequent choice to pursue one line of defense over another is given substantial deference on review. *See United States v. Balanzo*, 916 F.2d 1273, 1294 (7th Cir. 1990) (noting that "once defense counsel conducts a reasonable investigation into all lines of possible defenses, counsel's strategic choice to pursue one line to the exclusion of others is rarely second-guessed on appeal"). Accordingly, the court finds that Jensen is not entitled to relief on this ground.

### C.    Failure to Deliver an Opening Statement

Jensen next argues that counsel was ineffective for failing to deliver an opening statement. (Jensen's Brief 15.) Jensen further argues that failing to prepare and deliver an opening statement amounted to ineffective assistance of counsel and deprived Jensen of a fair trial because the jury did not have the benefit of any theory of defense or information as to what the evidence admitted during the course of the trial would show. (*Id.*)

-8-

An attorney's decision to waive the right to an opening statement may be categorized as a tactical trial decision, and is best left to the discretion of the trial attorney. *See United States v. Lloyd*, 983 F. Supp. 738, 743 (N.D. Ill. 1997). Failure to deliver an opening statement is not sufficient grounds for establishing ineffective assistance; to the contrary, courts have found sound reasons for counsel to abstain from delivering an opening statement. *Id.*

As the government points out in their response to Jensen's petition, it is likely that Giesen's abstention from delivering an opening statement was an intentional decision and part of his overall trial strategy. Giesen's goal appeared to be to minimize Jensen's involvement with the Outlaws, and by not presenting a theory of defense and outlining it in an opening statement, Giesen was acting very much in accordance with such a strategy. Moreover, this approach was a sound method of defense, and was further solidified during portions of Geisen's cross examination and closing argument to the jury where he attempted to make Jensen appear peripherally involved, if at all, with the Outlaws. For example, during the cross examination of government witness Wolf, Giesen elicited testimony tending to show that Jensen was not involved with the Outlaws or their criminal activities:

> MR. GIESEN: He [Jensen] wasn't a member of any Outlaw chapter at the time, was he?
> WOLF: No.
> MR. GIESEN: And, in fact, when you probated and joined the Outlaws, Jack Jensen was not a member of any Outlaw club, correct?
> WOLF: That's correct.
> MR. GIESEN: You testified about events that occurred in Lancaster, do you recall that?

-9-

WOLF: Yes.
MR. GIESEN: Mr Jensen wasn't an Outlaw when you participated in that, was he?
WOLF: No.
MR. GIESEN: And he wasn't present, didn't go along on that outing, did he?
WOLF: No.

(Trial Tr. vol. 47, 531-32, April 5, 2000.) A viable trial tactic for mitigating damaging information is to not draw attention to it. *See Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003).

The Seventh Circuit has also recognized that "[w]aiving the opening statement may be the best, or at the very least, an acceptable strategy for an attorney to adopt." *Lloyd*, 983 F. Supp. at 743 (citing Peter Murray, Basic Trial Advocacy 98 (1995)). Here, as referenced above, it's very likely Giesen's waiver was not a negligent maneuver, but rather one done with careful planning and strategy in mind. This court finds Giesen's waiver to have been reasonable and well within the wide range of latitude accorded an attorney's professional judgment under *Strickland.*

### D. Failure to Obtain Expert Witness Services

Jensen also claims Giesen was ineffective for failing to obtain expert testimony regarding the alleged tampering of tape-recorded evidence. Jensen appears to rely on 18 U.S.C. § 3006A(e), and argues that his attorney should have unitized funds potentially available under this statute to secure the expert testimony necessary to impeach the validity of the government's evidence. Specifically, Jensen argues that witness Mark Quinn tampered with the recording device during a November 15, 1996

-10-

meeting with Jensen. Jensen states that Steve Cain, a forensic audiologist, could have testified that the tapes were tampered with.

United States Code Title 18 Section 3006a(e) provides that:

> [c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

Thus, as directed by this statute, if the court finds the requested services necessary and the defendant is indigent, the court shall authorize the defendant's attorney to obtain the services. The Seventh Circuit has stated "[a]n appropriate test for determining when services falling under § 3006A(e) are necessary is "whether a reasonable attorney would engage such services for a client having independent financial means to pay for them." *United States v. Goodwin*, 770 F.2d 631, 635 (7th Cir. 1985) (quoting *United States v. Alden*, 767 F.2d 314, 318 (7th Cir. 1984)). Additionally, courts sitting in other circuits have articulated that meeting this "particularized need" requires the defendant to show "the exact expert services desired; the specific expected testimony of the expert; how and for what purpose the testimony will be used; and how the expected testimony is necessary to the defense," [and] "[a] showing of mere desirability of an expert is not sufficient to warrant the appointment of an expert witness at government expense." *United States v. Lee,* 1997 WL 445820 *3 (D. Kan. 1997). In Jensen's petition, he states that his

-11-

attorney told him after a balancing of the potential testimony along with a review of the costs associated with the expert services, Giesen determined that it would not be appropriate to go forward with requesting coverage of these expenses. This is precisely the inquiry section 3006A(e) requires attorneys to make; they must determine if the expert's services would be a cost-effective way of representing their clients. If the attorney determines that such services are not necessary or would not be cost-effective, then it is not appropriate for them to move for CJA payment under this statute. Giesen made such a determination, yet found that securing the expert's services would not be cost-effective in representing Jensen's interests. Such conduct is not ineffective in any way and Jensen is not entitled to relief on this ground.

### E.    Failure to Move for Severance of Defendants and Charges

Jensen argues that Giesen was also ineffective for failing to secure severance of the defendants and severance of the charges. As will be discussed below, this argument is wholly without merit. Giesen, along with several other co-defendants, filed for severance of the defendants and separate trials in this case. During the pretrial phase of this case, these motions were considered by the court and denied. (*See* August 28, 1998 Order at 98-114.)

Rule 8 of the Federal Rules of Criminal Procedure provides a presumption of joinder of defendants and offenses if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts

Case 2:04-cv-00474-JPS   Filed 07/11/07   Page 12 of 27   Document 24

of a common scheme or plan" and the defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8. Rule 14 of the Federal Rules of Criminal Procedure states "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14.

As the government noted in its response, counsel for Jensen as well as several other defendants moved for severance based upon concerns relating to spill-over evidence, the exculpatory testimony of co-defendants, and the concerns inherent with a "mega-trial." (August 28, 1998 Order at 99, 108, 114.) Magistrate Judge William E. Callahan, Jr., the magistrate assigned to handle the pretrial motions in Jensen's underlying case, carefully considered each of the defendant's motions against the Rule 14 standards and Seventh Circuit case law, and found that severance relief under Rule 14 was not warranted. (*Id.*) Jensen's petition requesting "severance of the charges" evidences that he misunderstands the applicable law in this area; these determinations were made in the pre-trial stages and Giesen effectively litigated them on behalf of Jensen at that time. The counts Jensen was charged with involved RICO substantive and conspiracy charges; the evidence as to each of these charges was inextricably linked with other co-defendants in this

-13-

case, and severance of the defendants for the purpose of trial would have been inefficient and cumulative. Therefore, Jensen is unable to demonstrate that his attorney was ineffective for not securing severance and he is not entitled to relief.

### F.     Failure to Fully Advise Jensen of Plea Offer

Jensen also argues that attorney Giesen was ineffective for his failure to adequately communicate the plea agreement to his client. Jensen states that Giesen did not advise him as to his chances of acquittal or the likely outcome of his case. (Jensen's Brief 26.)  Jensen attached an April 15, 1999 letter from Giesen which details the plea negotiations Giesen had with the government.   (Jensen's Pet. Exhibit 7.) Giesen goes into substantial detail about the current charges Jensen faces and the applicable guideline ranges, as well as the amendments the government was willing to make should Jensen decide to plead guilty.  (*Id.*) Giesen also gives sentencing guideline estimates to both of these situations.  (*Id.*)

It is well-settled that the *Strickland* test applies to the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). In the context of plea negotiations, the Seventh Circuit has held that a petitioner must show that his attorney's conduct fell below an objective standard of reasonableness, and to demonstrate the "prejudice" prong of *Strickland*, a petitioner must establish through objective evidence that there is a reasonable probability that, but for counsel's advice, he would have accepted the plea. *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).  However, as appears from the analysis that follows, Jensen is not able to establish the performance prong of the *Strickland* test.

-14-

To begin, Jensen is not able to point to any instance where Giesen's conduct fell below an objective standard of reasonableness. Although he states that he was not properly or adequately informed as to pertinent information regarding the plea agreement, the letter from his attorney he submitted seems to indicate the very opposite. The Seventh Circuit has held that an attorney is obligated to communicate relevant terms of plea offers to clients, and a failure to communicate the terms or offer constitutes ineffective assistance of counsel. *United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996) (citing *Johnson v. Duckworth*, 793 F.2d 898 (7th Cir. (1986)).

Giesen certainly complied with these requirements; he communicated the specific terms of the agreement, provided advice as to the potentially applicable guidelines and allowed his client to make the ultimate decision as to whether or not he should accept the agreement. Jensen is not able to show that Giesen's representation fell below an objective standard of reasonableness, and therefore, he is not entitled to any relief on this ground.

### G. Ineffective Assistance of Appellate Counsel

Jensen also claims his attorney on appeal, Strang, was ineffective in violation of his Sixth Amendment rights. The right to the effective assistance of appellate counsel is evaluated in much the same way as the right to effective trial counsel; the court analyzes the petitioner's claims under the two-part *Strickland* test. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). However, the right to effective

-15-

assistance of counsel does not require an appellate attorney to raise every single issue on appeal. *Id.* at 893. To satisfy the performance prong of *Strickland*, an appellate counsel need only raise those issues that are (1) significant and obvious and (2) clearly stronger than the issues raised. *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994).

At the outset, the court notes a few of the claims that were raised on appeal by Jensen and several co-defendants. They challenged the RICO conspiracy charges and argued that a conspiracy could not be included as a predicate racketeering offense because an inchoate offense could not be a racketeering activity as defined by 18 U.S.C. § 1961(1)(A). *See United States v. Warneke,* 310 F.3d 542, 546-47 (7th Cir. 2002). The defendants additionally challenged the limiting instructions given by the court, and argued that the jurors were not adequately reminded to consider the evidence and guilt as to each defendant individually. *Id.* at 549. The defendants also challenged their sentences based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000) arguments. *Id.*

Although the Seventh Circuit rejected each of these arguments and others, the court is not persuaded that the claims Jensen argues his appeallate counsel, Dean Strang, should have brought on appeal are significant, obvious, and clearly stronger as required by *Kelly.* Jensen argues Strang was ineffective for the following reasons: (1) his failure to bring to the attention of the appellate court the alleged prosecutorial misconduct; and (2) his failure to appeal the court's order

-16-

denying Giesen's motion for a new trial. In regards to the prosecutorial misconduct allegation, Jensen argues the government acted improperly by including incorrect dates in charging materials, using witnesses that fabricated testimony, and failing to disclose exculpatory materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

When a petitioner alleges that the government utilized false or perjured testimony to establish its case, the petitioner must show that the testimony was in fact false and the government used it with actual or constructive knowledge of the falsity. *See Holleman v. United States*, 721 F.2d 1136, 1138 (7th Cir. 1983). Here, Jensen has done neither and thus, he has not demonstrated that Strang was ineffective for not raising these issues on appeal, and most importantly, he has not demonstrated this to be a strong and obvious issue for purposes of appeal.

In a similar vein, Jensen is not able to establish a *Brady* violation. To do so a petitioner must show: (1) the prosecution suppressed evidence; (2) the evidence allegedly suppressed was favorable to the defense; and (3) the evidence was material to an issue at trial. *Brady v. Maryland*, 373 U.S. at 87; *United States v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000). In support of his argument, Jensen appears to argue that the fact that he was tried with the other co-defendants caused the government to unfairly withhold exculpatory evidence favorable to him. Specifically, Jensen states:

> The prosecutor failed to release additional exculpatory evidence to Petitioner's counsel. In a case so complicated that it has over 900 exhibits and over 150 witnesses, and has so little exculpatory evidence regarding Petitioner, it is possible to say that the government had less

-17-

> than a circumstantial case against Petitioner, if the Petitioner's case
> was severed from the other defendants, Petitioner would not be in
> prison right now.

(Jensen's Brief 22.)  If this is what Jensen is contending, his reliance on *Brady* is misplaced.  Arguing the government improperly tried co-defendants together does not amount to a viable *Brady* challenge. Jensen also criticizes a government special agent for the manner in which transcripts of the audio tapes were prepared for trial. However, this too does not demonstrate that the government withheld any evidence in violation of *Brady*. The court concludes that Strang was not ineffective for failing to raise these vague and inarticulate alleged *Brady* violations on appeal. The court further finds that the RICO, *Apprendi*, and limiting instruction issues were much stronger and more obvious claims to have raised.  Accordingly, Jensen has not met his burden as required by the Seventh Circuit.

Jensen also claims Strang was ineffective because he did not appeal the court's October 6, 2000 order denying Giesen's motion on behalf of Jensen for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  (October 6, 2000 Order, Docket # 1664) (hereinafter "October 6, 2000 Order.") The court disagrees. As will be explained below, the court properly considered Giesen's motion, and to appeal its denial would have been frivolous.

In Jensen's Rule 33 motion brought in the district court, he claimed that he had newly discovered evidence exonerating him from each of the racketeering acts proven against him.  (*See* October 6, 2000 Order 1.) Specifically, he stated he had

-18-

an affidavit by co-defendant Kevin O'Neill who averred that Jensen did not assist or participate in any of the racketeering acts. The court noted that Rule 33 motions for new trials are not granted freely or often because a jury verdict for a criminal conviction is not to be overturned lightly. (*Id.* at 1-2) (citing *United States v. Morales*, 902 F.2d 604,605 (7th Cir. 1990)). The court applied the four-pronged test a defendant must meet in its consideration of Jensen's motions: (1) that the newly discovered evidence came to the defendant's attention only after trial; (2) that the evidence could not have been discovered sooner through the exercise of due diligence; (3) that the evidence is material and not merely impeaching or cumulative; and (4) that the evidence would probably lead to an acquittal in the event of a new trial. (*Id.*) In the court's order, it noted that Jensen was not even able to meet the first prong of the Rule 33 test: that the newly discovered evidence came to the defendant's attention only after trial. (*Id.* at 3.) In Jensen's motion, he admitted that he knew of O'Neill's averment prior to trial, but he was not able to get O'Neill to sign the affidavit at the necessary time because O'Neill could not state with certainty that he would not testify. (*Id.*) The court also cited a list of cases in which courts held that a co-defendant's post-verdict exculpatory averments were not newly discovered evidence within Rule 33. (*Id.* at 3-4.)

Any appeal of the court's October 6, 2006 order would have likely failed. Indeed, the Seventh Circuit has held "[w]e will reverse a district court's denial of a motion for a new trial based on newly discovered evidence only if the district court

Case 2:04-cv-00474-JPS   Filed 07/11/07   Page 19 of 27   Document 24

has abused its discretion." *United States v. Theodosopoulos*, 48 F.3d 1438, 1448 (7th Cir. 1995) (citing *United States v. Gootee,* 34 F.3d 475, 479 (7th Cir. 1994)). The Seventh Circuit continued "[w]e approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury." *Id* (quoting *United States v. DePriest*, 6 F.3d 1209, 1216 (7th Cir. 1993)). Accordingly, the court finds that neither of the potential appellate claims Jensen argues Strang should have brought were significant or obvious; to the contrary, the court notes that these claims would have been extremely weak, indeed, frivolous issues to raise on appeal.

## H.    Cumulative Effect of Counsels' Errors

Finally, Jensen argues that the cumulative effect of all of the errors he alleges occurred violated his right to a fair trial. (Jensen's Brief 27.) Jensen further argues that even if the isolated incidents of his attorneys' performance did not amount to ineffective assistance of counsel, the errors viewed in the aggregate did violate the *Strickland* standard. (*Id.*)  Although allegations of incompetence are considered individually, a court also is obliged to consider the cumulative effect of the attorney's representation in its entirety. *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir. 1984) (citing *Strickland v. Washington*, 466 U.S. 696 (1984)). As the court noted in the discussion above, neither Giesen's nor Strang's performance fell below an objective standard of reasonableness required by *Strickland.* Therefore, it cannot be said that Jensen was prejudiced by his counsel's performance, even when his claims are considered cumulatively.

-20-

## II. Judicial Misconduct

Jensen claims the court acted improperly by threatening the defendants to prevent them from testifying at trial; improperly instructing the jury; failing to address a sleeping juror; and by improperly denying funding for expert services. Jensen's claim in reference to judicial misconduct has been procedurally defaulted; therefore, and he is not entitled to any relief. It is well-settled that the procedural default rule precludes collateral review of any claim not raised on direct appeal, unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or if the petitioner can demonstrate that enforcing the default would result in a "fundamental miscarriage of justice." *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); *see also Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Although some issues, such as ineffective assistance of counsel claims, are exempt from this procedural bar, a section 2255 motion cannot raise constitutional issues that were not raised on direct appeal *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

Jensen did not raise this issue on appeal, nor does he set forth any information that would lead the court to conclude that he has demonstrated cause for the procedural default and actual prejudice from the failure to raise this issue on appeal. Furthermore, even if the court were to consider these claims on the merits, none of the alleged judicial errors Jensen raises are cognizable.

-21-

First, Jensen misconstrues the court's statements in regards to the defendants testifying. Jensen argues that the court directed the attorneys to "memorize [sic], for own records conversations with the defendant's [sic] concerning the implication of the sentencing guidelines upon obstruction of justice, etc." (Jensen's Brief 25.) The court was simply warning the defendants of the substantial risks of giving perjured testimony, and attempting to ensure the defendants understood the guideline ramifications for purposes of the Sentencing Guidelines by proceeding to trial and giving perjured testimony under oath. Contrary to Jensen's view of these statements, the court's comments did not hinder his constitutional right to testify in any manner. Therefore, Jensen's claim is without merit.

Next, Jensen claims the court erred in failing to address a juror who allegedly slept during parts of the trial, and he claims this entitles him to automatic reversal of the conviction and sentence. Jensen submits no evidence, case law, or citations to the record in reference to this claim, and the court is constrained to deny Jensen relief as to this ground.

Generally, courts have been reluctant to reverse a conviction or grant a new trial based on allegations of sleeping jurors. *See, e.g., United States v. Tierney*, 947 F.2d 854, 868-69 (8th Cir. 1991). Thus, it follows that the fact that a juror is asleep or inattentive during the course of the trial does not require that a court automatically declare a mistrial, and it certainly does not lead to an automatic reversal of a defendant's conviction and sentence. *See United States v. Frietag*,

-22-

230 F.3d 1019, 1022 (7th Cir. 2000). Moreover, a trial court has considerable discretion when deciding how to handle a sleeping juror. *Id.*; *see also United States v. Springfield,* 829 F.2d 860, 864 (9th Cir. 1987). The Seventh Circuit has held that a new trial or reversal is only warranted if the defendant is able to show that the juror missed essential portions of the trial, and that the defendant was deprived of his Fifth Amendment due process rights or his Sixth Amendment rights to an impartial jury due to the juror's misconduct. *Frietag*, 230 F.3d at 1022.

After a review of Jensen's submissions and the government's response, the court concludes that Jensen is not entitled to either a reversal of his conviction or new trial. To be sure, the trial in this case was particularly lengthy, and jurors were permitted to take notes during the trial and also were provided with detailed exhibit lists to assist their memories during their deliberations. Jensen failed to notify the Seventh Circuit of any such juror misconduct, leaving the court to conclude that his allegations of juror misconduct are procedurally barred and lacking in merit.

Jensen also argues the court erred in denying him funds to secure a tape recording expert to examine the government's tapes at trial. As the court discussed in Part I-D of this order, securing expert funding of this expert was the prerogative of Jensen's trial attorney, who ultimately determined this expert's testimony would not be cost-effective. The court did not wrongfully deny Jensen any sort of funding for expert services, and his arguments in this regard are without merit.

Finally, Jensen argues that the court erred in instructing the jury by directing the jurors that if the jury found the evidence "equally pointing to guilt or innocence, they were to lean towards guilt." (Jensen's Brief 25-26.) The court has carefully read the jury instructions in this case, and it finds no part or section conveying such an instruction. Indeed, the court's review shows the instructions to convey an exact opposite directive. At Part I of the jury instructions, labeled the "General Introduction," the court informed the jurors:

> [t]he defendants are presumed to be innocent of the charges for which each is on trial. This presumption remains with each defendant throughout every stage of the trial and during your deliberations on the verdicts, and is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that a particular defendant is guilty. The government has the burden of proving the guilt of each defendant beyond a reasonable doubt, and this burden remains on the government throughout the case.

(Jury Instructions, Docket # 1645 at 5.) Next, at Part II of the jury instructions, the court instructed the jurors on applicable law and stated:

> [i]f you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt as to a particular defendant, you should find that defendant guilty. If, on the other hand, you find from your consideration of all the evidence that one or more of theses elements has not been proved beyond a reasonable doubt as to a particular defendant, then you should find that defendant not guilty.

(*Id.* at 28.) Jensen's statement and categorization of the court's jury instructions are incorrect, and the court finds no error on this ground. Accordingly, Jensen's argument on this point is without merit.

-24-

### III. Jensen's Request for an Evidentiary Hearing

In Jensen's amended petition, he requests that the court conduct an evidentiary hearing to review his claims. A court may dismiss a 2255 petition without holding an evidentiary hearing if on the face of the record it appears the petitioner is not entitled to any relief. *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir. 1994) (citing *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir.1989)). Pursuant to the court's statements above, it finds that on the face of the record Jensen is not entitled to any relief on the face of his petition because he has not satisfied either prong of the *Strickland* test to demonstrate ineffective assistance of counsel, nor has he shown judicial misconduct. Therefore, the court denies Jensen's request for an evidentiary hearing on his petition.

### IV. Jensen's Motion to Supplement

Finally, on October 13, 2006, Jensen filed a motion to supplement Ground II of his petition (allegations of judicial misconduct), citing to Rule 15(d) of the Federal Rules of Civil Procedure. Specifically, Jensen claims that the court threatened him to prevent him from testifying in violation of his constitutional rights. (Jensen's Motion to Supplement 1-2.)

Rule 15(d) allows a party to supplement pleadings and set forth facts or occurrences "which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d) (2006). In Jensen's motion, he does not submit any new facts, information, or occurrences and his motion is not properly

-25-

brought under Rule 15(d) because he alleges facts that are nearly identical to his July 18, 2004 petition.

Even if the court were to liberally construe his motion as one properly brought under Rule 15(c), it remains without merit and must be denied. Rule 15(c) provides that "an amendment of a pleading relates back to the date of the original pleading when · · · the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c) (2006). Although the facts set forth in Jensen's motion to supplement arise out of the same transaction, conduct, occurrence set forth in his original petition, the information and arguments are duplicative and, therefore, do not warrant an amendment.

Accordingly,

**IT IS ORDERED** that Jensen's petition under 28 U.S.C. § 2255 [Docket # 10] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Jensen's request for an evidentiary hearing [Docket # 13] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Jensen's motion to supplement [Docket # 23] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this  11th  day of July, 2007.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge